O’Neill, J.,
dissenting.
{¶ 308} Something is terribly wrong with Ohio’s application of the death penalty, and it does not seem to be getting any better with the passage of time. In 1994, Wilford Berry Jr. — commonly known as “the Volunteer” — began doing everything he could to speed up the implementation of his death sentence. Berry was convicted in 1990 of the aggravated murder of Charles Mitroff, and even then it was clear that Berry had struggled with mental illness all his life, including personality disorders. State v. Berry, 72 Ohio St.3d 354, 650 N.E.2d 433 (1995). But Berry was found to be competent to waive his appeals, and on February 19, 1999, he was executed- — the first person executed in Ohio in over 30 years.
{¶ 309} Seven years later, despite Donald Ketterer’s lifelong psychiatric problems (including bipolar disorder and personality disorders), this court concluded that he was competent to plead guilty to aggravated murder, and we affirmed his sentence of death. State v. Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48. In a concurring opinion, two justices of this court expressed their belief that the state should “reexamine whether we, as a society, should administer the death penalty to a person with a serious mental illness.” Id. at ¶ 213 (Lundberg Stratton, J., concurring, and Pfeifer, J., joining the concurrence). Thus far, no such reexamination has occurred.
{¶ 310} I have previously stated that the death penalty is both cruel and unusual and cannot be morally justified by retribution or deterrence. State v. Wogenstahl, 134 Ohio St.3d 1437, 2013-Ohio-164, 981 N.E.2d 900 (O’Neill, J., dissenting). But the unconstitutionality and inhumanity of capital punishment are even clearer when it is imposed on the mentally ill, such as Calvin Neyland. It is plain that the families of Douglas Smith and Thomas Lazar have suffered tremendously at Neyland’s hands, and they deserve to see Neyland punished. But I cannot support the proposition that it is a just punishment to take the life of a man whose delusions of persecution led him to commit the horrible acts for which he was convicted.
*410 Paul A. Dobson, Wood County Prosecuting Attorney, and Gwen Howe-Gebers and Heather M. Baker, Assistant Prosecuting Attorneys, for appellee.
{¶ 311} The majority has concluded that Neyland had not established the statutory mitigating factor under R.C. 2929.04(B)(3) that “at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to * * * conform the offender’s conduct to the requirements of the law.” This conclusion is baffling. The experts who testified at Neyland’s trial all agreed that Neyland suffered from significant mental problems that affected his behavior: Dr. Bergman concluded that Neyland had a severe personality disorder, Dr. Haskins concluded that Neyland had a mixed personality disorder, and Dr. Smith testified that Neyland had a paranoid personality disorder. And the defendant’s expert, Dr. Sherman, diagnosed Neyland with “delusional disorder, a persecutory type” and schizophrenia. Dr. Sherman concluded that Neyland, to a reasonable degree of scientific certainty, “was laboring under severe mental disease, mental illness * * * [and that] there is no way he could formulate conclusions in a normal way.”
{¶ 312} Neyland’s mental illness was apparent as far back as 1999, when he simply fell through the cracks in the system. At the time he killed Douglas Smith and Thomas Lazar, Neyland was living in his truck because he believed that people were breaking into his house to listen to the messages on his answering machine. As Dr. Sherman observed, at the time he committed the murders, Neyland suffered from “a severe mental illness of a paranoid type, that he suspected virtually everybody of something, [and] that [it] probably would have not taken very much to tip him off.” Neyland was and is very resistant to treatment, and this is most effectively demonstrated by his refusal to participate in developing a mitigation case. He then offered a statement in rebuttal to the diagnosis of his own defense expert, further evidencing his denial and delusions. A mentally competent person simply does not challenge the findings of a defense expert who has been hired with the sole objective of saving that person’s life.
{¶ 313} It is plain that Neyland is not now mentally fit and that he was suffering from mental defects at the time he committed his terrible acts. As former governor Michael DiSalle recognized in 1959 when he commuted the sentence of Lewis Niday, “[s]urely society [does] not need to take the life of a mentally defective individual in order to protect itself.”[3] Capital punishment in general is abhorrent, but executing the mentally ill is unconscionable. I dissent.
*411 Spiros P. Cocoves and Ann M. Baronas, for appellant.

. Quoted in Andrew Welsh-Huggins, No Winners Here Tonight: Race, Politics and Geography in One of the Country’s Busiest Death Penalty States at 116 (2009).